IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

_____

COMMERCIAL CREDIT PLAN, INC.,

     Plaintiff-Appellee,

Vs.

ESTATE OF ARTHUR SMITH, JR.,
EARLINE BRAWLEY,

     Defendants,

T.R.W. TITLE INSURANCE
CORPORATION OF NEW YORK,
a corporation,

     Defendant-Appellant.

Shelby Chancery No. 106149
C.A. No. 02A01-9708-CH-00204

FILED

June 12, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE NEAL SMALL, CHANCELLOR

W. Ray Jamieson of Memphis
For Appellee, Commercial Credit Plan, Inc.

Randy S. Gardner, Apperson, Crump,
Duzane & Maxwell of memphis
For Appellant, T.R.W. Title Insurance Corporation

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

CONCUR:

DAVID R. FARMER, JUDGE

HOLLY KIRBY LILLARD, JUDGE

This appeal involves a suit to recover under a policy of title insurance. Defendant/Appellant TRW Title Insurance Corporation of New York (TRW) appeals the judgment of the trial court awarding plaintiff Commercial Credit Plan, Inc. (CCP) $23,500.00.

A written stipulation of facts filed in this cause states:

1. On December 7, 1993, Commercial Credit Plan, Inc. made a loan to Arthur Smith, Jr. in the principle amount of Twenty-Five Thousand Seven Hundred Sixty-Nine and 11/100 Dollars ($25,769.11). The number of payments was 120 payments at $427.69 per month commencing on January 11, 1997. The loan was evidenced by a Promissory Note dated December 7, 1993 signed by Arthur Smith, Jr. and attached hereto as Exhibit "A".

2. To secure the loan, Commercial Credit Plan, Inc. took a mortgage against the real property known as 3415 Outlet, Memphis, Shelby County, Tennessee.

3. A Deed of Trust perfecting Commercial Credit Plan's mortgage against the above described property was signed by Arthur Smith, Jr. and filed with the Shelby County Register's Office at Instrument No. EA 5904 and EC 8580. The Deed of Trust is attached hereto as Exhibit "B".

4. On December 4, 1993, T.R.W. Title Insurance Corporation of New York issued a Mortgage Title Insurance Policy on the above referenced property. A copy of the policy is attached hereto as Exhibit "C".

5. Arthur Smith, Jr. defaulted on the Note and Deed of Trust described above and sometime thereafter Commercial Credit Plan, Inc. commenced foreclosure proceedings on the above described property. The foreclosure was scheduled for Monday, February 20, 1995 at 12 o'clock noon.

6. Sometime between December, 1993 and August, 1996, Arthur Smith died.

7. Prior to the foreclosure sale described above, documentation was produced to Commercial Credit Plan, Inc. indicating that the estate of Arthur Smith, Jr. does not have clear title to the subject property, but only a partial interest. The property secured by the Deed of Trust is owned jointly by the Estate of Arthur Smith, Jr. and Earline Brawley, each owning an undivided one-half (½) interest in the subject property as devised by the Last Will or Arthur Smith (Sr.) dated July 29, 1972. A copy of the Will is attached hereto as Exhibit "D".

8. The appraised value of the subject property as a whole is Twenty-Three thousand Five Hundred and No/100 dollars ($23,500.00). A copy of the appraisal is attached hereto as Exhibit "E".

9. The lien of Commercial Credit Plan, Inc. against the subject property as described above, is valid and enforceable as to an undivided one-half interest in the subject property.

The following testimony was introduced at trial: After receiving proof of Ms. Brawley's interest, CCP canceled the foreclosure sale which had been scheduled for February 20, 1995. Approximately five months later, in July of 1995, Robert Castile of CCP contacted Dave Davis

of Strategic Mortgage Services, Inc., the policy issuing agent for TRW, to discuss a possible claim under the policy of title insurance. Castile testified that during a subsequent conference call between Davis, Castile, and W. Ray Jamieson, CCP's attorney, Davis denied the claim on behalf of TRW. TRW's officer, Mark Pfeiffer, testified, however, that Strategic Mortgage Services and Mr. Davis are not agents for claims on the policies issued by TRW.

After the conversation with Mr. Davis, CCP filed suit in Shelby County Chancery Court against TRW to recover under the policy of title insurance.[1] TRW asserts that it did not become aware of CCP's claim until it was served with a copy of the lawsuit. TRW contends that it was prejudiced by CCP's failure to timely notify it of a potential claim under the policy and that the suit should be dismissed because CCP failed to comply with the policy provisions regarding notice and proof of loss.

The trial court found that CCP provided notice of the claim to Strategic Mortgage Services and that TRW had imputed notice of the claim through its agent. The court also found that CCP had not failed to fulfill a condition precedent under the terms of the title insurance policy. Furthermore, the court found that CCP had a valid and enforceable lien against an undivided one-half interest in the property. The court also found that this interest had value, but that the amount was not established at trial. The trial court granted judgment to CCP in the amount of $23,500.00, the stipulated value of the property.

TRW appeals the judgment of the trial court and has raised three issues for review:

> 1. Whether the trial court erred in failing to dismiss plaintiff's case for failure to fulfill a condition precedent.
>
> 2. Whether the trial court erred in finding that the plaintiff CCP met its burden of proving damages in the amount of $23,500.00.
>
> 3. Whether the trial court erred in finding that the defendant TRW was not prejudiced due to plaintiff's failure to provide notice of the claim and proof of loss as specified in the policy of title insurance.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law.

---

[1] The suit also sought recovery against the estate of Arthur Smith, Jr., for the balance due on the indebtedness. Although somewhat ambiguous, we construe the trial court's judgment to resolve the question of the estate's liability in favor of the estate.

T.R.A.P. 13(d).

Issues number one and three relating to conditions precedent to coverage and prejudice will be addressed together. TRW asserts on appeal that CCP "failed to make proper demand to TRW for coverage under the subject policy as required under its conditions and stipulations." Specifically, TRW argues that because CCP failed to give notice of the claim and proof of loss in writing to the address specified in the policy, "TRW was not given the opportunity to either indemnify, defend or refuse to do so." As a result, TRW was denied "the opportunity to take actions prior to litigation which could have mitigated damages to the parties and/or avoided the cost of litigation."

The relevant policy provisions on notice are as follows:

3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing . . . (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy . . . If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided however, failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

\*       \*       \*       \*

5. PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn by the claimant shall be furnished to the company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation with regard to the matter or matters requiring such proof of loss or damage.

\*       \*       \*       \*

4

16. NOTICES, WHERE SENT

> All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at its Kansas Corporate Headquarters, 8800 College Blvd., Suite 700, Overland Park, Kansas 68211.

TRW asserts that the case should have been dismissed because CCP failed to fulfill the conditions precedent of providing adequate notice and proof of loss as required under the conditions and stipulations of the policy.

Upon review of the pertinent policy provisions, we conclude that the notice and proof of loss requirements in this particular policy do not create conditions precedent to coverage. It is true that provisions requiring "prompt" or "immediate" notice to an insurer have been held to create conditions precedent whose failure to fulfill will justify the denial of coverage even in the absence of prejudice to the insurer. *See **Hartford Accident & Indem. Co. v. Creasy,*** 530 S.W.2d 778 (Tenn. 1975); ***Allstate Ins. Co. v. Wilson***, 856 S.W.2d 706, 709 (Tenn. App. 1992). However, the language of Section 3 of the instant policy is at odds with such a strict construction because this section provides that "failure to notify the Company shall in no case prejudice the rights of any insured under this policy *unless the Company shall be prejudiced by the failure* and then only to the extent of the prejudice." (emphasis added). In other words, failure to provide prompt notice does not, in and of itself, negate coverage. Therefore, strictly speaking, it is not a condition precedent. Section 5 requiring proof of loss or damage contains similar language and must be interpreted accordingly.

Nevertheless, if TRW can show that it has been prejudiced by the delay in notice, it may escape liability, at least to the extent of the prejudice. TRW asserts that it did not receive notice of CCP's claim until it was served with this lawsuit in August of 1995, more than five months after CCP learned of the defect in title. However, the trial court found that TRW had imputed notice of CCP's claim through its agent, Strategic Mortgage Services, and that TRW had "not been prejudiced by its liability to its own attorneys for fees and court costs in this cause by any failure of [CCP] to follow the terms of the policy."

We note that CCP had knowledge of the title problem in February 1995, but first contacted the agent in July 1995, some five months later. Even if we construe the verbal notice to the agent as compliance with the policy provisions, we cannot accept a finding that a five

month delay is "giving notice promptly."

The issue then becomes whether the five month delay in giving notice, or CCP's failure to provide written notice and proof of loss in accordance with the terms of the policy, prejudiced the rights of TRW. TRW asserts that it has incurred attorney fees in the instant litigation that it would not have otherwise incurred if it had received proper notice. It is undisputed that CCP did not comply with the policy provisions requiring written notice of the claim and written sworn proof of loss. It appears that such policy provisions are designed, at least in part, to provide the insurer an opportunity to assess its options without incurring litigation expenses. In this case, TRW did not have that opportunity and was prejudiced to the extent of the extra expense incurred. We respectfully disagree with the chancellor's finding on this issue.

In its remaining issue, TRW asserts that CCP did not prove its damages as required by the policy. The policy provides:

> 7. Determination and Extent of Liability.
> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
>
> (a) The liability of the Company under this policy shall not exceed the least of:
>
>> (i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and stipulations;
>>
>> (ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided in Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or
>>
>> (iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

CCP introduced the testimony of Ray Hoover, real estate appraiser, as an expert witness. He testified that the property involved was worthless, that it had no value whatsoever. However, we note from his testimony that he was under the impression that there could be no foreclosure of an undivided one-half interest. Moreover, it is apparent from his testimony that he had no

understanding that once the property was foreclosed the successful bidder would be a tenant in common with Mrs. Brawley.   As such a tenant in common the bidder is entitled to a partition or sale for partition.  T.C.A. § 29-27-101 (1980) and T.C.A. § 29-27-201 (1980); *Yates v. Yates*, 571 S.W.2d 293 (Tenn. 1978).

The trial court did not accept Mr. Hoover's testimony and found that the property had some value but that the value was not established by the proof.  We agree with the trial court in that regard.  The proof simply did not prove a measure of damages as required by the policy provisions.

Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings to establish the damages due the plaintiff as provided in the policy.  Defendant, TRW, is entitled to credit against the amount of damages incurred for such sums it was required to expend by virtue of CCP's failure to comply with the policy provisions regarding notice and proof of loss.  Costs of the appeal are assessed equally to CCP and TRW.

                                          _____

                                          **W. FRANK CRAWFORD,**
                                          **PRESIDING JUDGE, W.S.**

_____

**DAVID R. FARMER, JUDGE**

_____

**HOLLY KIRBY LILLARD, JUDGE**